# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| *Plaintiff*, | ) ) ) |
| v. | ) Case No. CR-19-163-D |
| LAQUAY LEE JEFFERS, | ) ) ) |
| *Defendant*. | ) |

## ORDER

Before the Court is Defendant Laquay Lee Jeffers' Motion to Suppress [Doc. No. 15], seeking either the suppression of any items seized during the April 4, 2018 stop and search, or in the alternative, a hearing on the Motion. The government responded [Doc. No. 18]. On October 17, 2019, the Court held an evidentiary hearing regarding the motions. Defendant appeared personally and through appointed counsel, David B. Autry. The government appeared through Assistant United States Attorney Ashley Altshuler. The Court heard testimony from Sergeant Charles McMackin ("McMackin") and received government exhibits Nos. 1–4. The parties presented their arguments, generally adopting the positions presented in their written briefs. Upon consideration of the evidence, the case record, and the parties' arguments, the Court rules as follows.

## BACKGROUND

In a one-count Indictment, Defendant Laquay Lee Jeffers was charged with violating 18 U.S.C. § 922(g)(1) [Doc. No. 1]. On April 4, 2018, McMackin, a

1

Sergeant with the Oklahoma City Police Department, saw a Ford Fusion travel on the white lane line for roughly one-hundred feet. *See* Doc. No 15 at 1; Doc. No. 18 at 2. McMackin engaged his emergency lights and siren and followed the vehicle. Doc. No. 15 at 1.

The driver of the Ford Fusion, later determined to be Defendant, ignored the emergency lights and drove into a parking lot. Doc. No. 18 at 2. The Ford Fusion circled a light pole approximately three times. *Id*. Defendant then continued through the apartment complex, traversing grassy areas and sidewalks before finding himself boxed between two buildings. *Id.*

At that point, McMackin exited his patrol car, approached the Ford Fusion, and commanded Defendant to get on the ground and show his hands. *Id.* Defendant moved from the driver's door to the passenger's door. *Id.* As McMackin closed his distance, Defendant attempted to move back to the driver's side door. *Id.* McMackin reached through the front passenger side window, which was halfway down, and deployed his taser to Defendant's back. *Id.*

As McMackin opened the front door commanding Defendant to get on the ground, McMackin saw a handgun on the passenger seat near Defendant. *Id*. at 3. A backup officer subsequently seized the gun, once Defendant was in handcuffs. *Id*.

## STANDARD OF DECISION

The purpose of a suppression hearing is "to determine preliminarily the admissibility of certain evidence allegedly obtained in violation of defendant's

rights under the [Fourth Amendment]." *United States v. Merritt*, 695 F.2d 1263, 1269 (10th Cir. 1982). "The proper inquiry is whether [the challenged action] violated the Fourth Amendment rights of [the] criminal defendant making the challenge." *United States v. Allen*, 235 F.3d 482, 489 (10th Cir. 2000) (quoting *United States v. Erwin*, 875 F.2d 268, 270 (10th Cir. 1989)).

"The proponent of a motion to suppress has the burden of adducing facts at the suppression hearing indicating that his own rights were violated by the challenged search." *Rakas v. Illinois*, 439 U.S. 128, 132 (1978); *United States v. Eckhart*, 569 F.3d 1263, 1274 (10th Cir. 2009) (quoting *Allen*, 235 F.3d at 489). The burden is then on the government to prove by a preponderance of the evidence that any warrantless search or seizure that occurred was lawful. *U.S. v. Roberts*, 14 F.3d 502 (10th Cir 1993), *cert denied*, 514 U.S. 1043 (1995). The controlling burden of proof at a suppression hearing is proof by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974); *accord United States v. Maurek*, 131 F. Supp. 3d 1258, 1261–62 (W.D. Okla. 2015) (DeGiusti, J.).

## DISCUSSION

I. **As Defendant did not stop once McMackin engaged his emergency lights, he was not seized under the Fourth Amendment.**

Defendant argues that he did not commit an in-fact violation of Okla. Stat. Ann. tit. 47, § 11-309 and therefore, McMackin's stop could not be justified at its inception. As such, the search of Defendant's car was unlawful. Doc. No. 15 at 2.

Because a traffic stop is a seizure under the Fourth Amendment, it must be justified at its inception—when the officer intrudes on the motorist's liberty interest. *United States v. Martinez,* 512 F.3d 1268, 1272 (10th Cir. 2008). A traffic stop is justified at its inception "if the officer has (1) probable cause to believe a traffic violation has occurred; or, (2) a reasonable articulable suspicion that 'this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction.'" *Id*. (quoting *United States v. Ozbrin*, 189 F.3d 1194, 1197–98 (10th Cir. 1999)).

The Fourth Amendment tolerates both mistakes of law or fact, so long as those mistakes are objectively reasonable. *Heien v. North Carolina*, 574 U.S. 54, 135 S. Ct. 530, 539–40 (2014) (officer's mistake of law, in stopping vehicle for which one of the brake lights was working, was reasonable); *accord United States v. Cunningham,* 630 F. App'x 873 (10th Cir. 2015) (unpublished) (arresting officers' interpretation of Colorado law to require the use of a turn signal when turning from hotel parking lot onto public street was objectively reasonable, and thus traffic stop was lawful; statute was ambiguous as to whether signaling a turn onto a public street from private property was required, and state courts were divided on the issue). The subjective understanding of the officer involved is irrelevant to the inquiry at hand. *Cf. Whren v. United States*, 517 U.S. 806, 813 (1996).

The Court can locate no clear guidance from Oklahoma state courts interpreting the statutory language at issue, [1] and the parties have cited to none.[2] In *United States v. de la Fuente-Ramos*, the Tenth Circuit found an officer was reasonable in believing a violation of 47 Okla. Stat. Ann. § 11-309 had occurred where his report stated that the vehicle in question "touched the lane line three times." 242 F.3d 391 (10th Cir. 2000) (unpublished). This gave the officer the necessary reasonable suspicion to make the initial stop.

Like in *Heien v. North Carolina* and *United States v. Cunningham*, where state courts had not spoken clearly as to the relevant inquiry, Oklahoma courts have provided no clear interpretation of the relevant statute. And the reasonableness analysis under Tenth Circuit precedent favors the government's position. As McMackin testified and the government argues, however, Defendant failed to yield to the officer's initial show of authority. As such, no Fourth Amended seizure occurred at the time McMackin engaged his emergency lights. Response at 4–5.

---

[1] In relevant part, the Oklahoma law at issue provides that:
> Whenever any roadway has been divided into two or more clearly marked lanes for traffic, the following requirements in addition to all others consistent herewith shall apply.
>
> A vehicle shall be driven as nearly as practicable entirely within a single lane.

Okla. Stat. Ann. tit. 47, § 11-309 (West).

[2] Defendant cites to one opinion, *Hutchinson v. State*, but that opinion never interprets the language and just mentions the statute in a footnote, indicating the traffic violation could have been a violation of several statutes. 562 P.2d 867, 870–71 (Okla. Crim. App. 1977).

5

II. **Under the totality of the circumstances, Defendant's seizure did not occur until McMackin hit Defendant with his taser, and that seizure was lawful.**

When an officer does not apply physical force to restrain a suspect, a seizure under the Fourth Amendment occurs only once: (1) an officer shows his authority; and, (2) the suspect "submit[s] to the assertion of authority." *California v. Hodari D.,* 499 U.S. 621, 625–26 (1991).

"In determining whether conduct constitutes submission to authority, we must examine the totality of the circumstances—the whole picture." *United States v. Mosley*, 743 F.3d 1317, 1325–26 (10th Cir. 2014). "[W]hat may amount to submission depends on what a person was doing before the show of authority: a fleeing man is not seized until he is physically overpowered, but one sitting in a chair may submit to authority by not getting up to run away." *Brendlin v. California*, 551 U.S. 249, 262 (2007). "[T]o comply with an order to stop—and thus to become seized—a suspect must do more than halt temporarily; he must submit to police authority, for there is no seizure without actual submission." *United States v. Salazar*, 609 F.3d at 1066 (internal marks omitted). "[S]ubmission' under *Hodari D.* requires, at minimum, that a suspect manifest compliance with police orders." *Id*.

In *Farrell v. Montoya*, the Tenth Circuit found no seizure under the Fourth Amendment. 878 F.3d 933, 937 (10th Cir. 2017). The Farrells were fleeing when the officer fired his gun at their vehicle. Though they momentarily halted the van,

6

they subsequently began driving away again. *Id.* "Like the defendants in *Hodari D.* [], they were not seized because, in fleeing, they were not submitting to the officers." *Id.* Further, the Tenth Circuit has acknowledged the following:

> [A] reasonable officer shouting "hands up" likely would have viewed [the defendant] as "seized" had [he] simply sat still in the car without making furtive motions. But the defendant's furtive motions, consistent with hiding or retrieving a gun, did not manifest submission, and instead were directly contrary to the officers' commands. Under the totality of the circumstances, a reasonable law enforcement officer would not view the defendant as submitting until he complied with the officers' orders to put his hands up.

*United States v. Roberson*, 864 F.3d 1118, 1122 (10th Cir. 2017), *cert. denied*, 138 S. Ct. 2649, 201 L. Ed. 2d 1053 (2018).

Here, the bodycam footage shows Defendant did not yield to McMackin's initial show of authority. Exhibit 1. He kept driving after McMackin engaged his emergency lights, and once Defendant stopped the vehicle—according to McMackin's testimony—he kept moving within the car. This was so until Defendant was hit with the taser. *See* Exhibit 1. The reasonableness of the seizure, therefore, depends on the totality of the circumstances at the time McMackin deployed the taser. *See United States v. Arvizu*, 534 U.S. 266, 273 (2002). The Court's inquiry, at this point, is whether McMackin had a particularized, objective basis for suspecting wrongdoing when he deployed the taser. *Id.*

As the government asserts, both Defendant's evasive behavior as well as the initial response to McMackin's show of authority are relevant to the inquiry. *See*

*Illinois v. Wardlow*, 528 U.S. 119, 124 (2000); *United States v. Walraven*, 892 F.2d 972, 975–76 (10th Cir. 1989). The totality of the circumstances must include all facts that arise as the encounter between the officer and Defendant evolved. By the time McMackin deployed the taser, Defendant had evaded McMackin's initial attempt to stop him by engaging his lights and siren. Defendant had then gone on to drive on grassy areas and over sidewalks, as he continued to evade the officer. Once McMackin stepped out of his vehicle and approached the Ford Fusion, he testified to seeing Defendant move within the vehicle. The bodycam footage shows Defendant ignoring verbal commands to put his hands behind his back even after McMackin's taser strikes him. Under the totality of the circumstances, McMackin had a particularized, objective basis for suspecting wrongdoing when he deployed the taser. The seizure under the Fourth Amendment was therefore lawful and the evidence properly obtained.

## CONCLUSION

For the reasons fully set forth herein, Defendant's seizure and the subsequent collection of evidence were lawful under the Constitution.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress any items seized during the April 4, 2018 stop and search [Doc. No. 15] is **DENIED**.

**IT IS SO ORDERED** this 30th day of October, 2019.

TIMOTHY D. DeGIUSTI
Chief United States District Judge